UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO.  04-510

JAMES E. FRANCIS,                                                          PLAINTIFF,

v.                                      **OPINION AND ORDER**

NAMI RESOURCES COMPANY, LLC,                                 DEFENDANT.

* * * * * * * * *

This matter is before the Court on the second Motion to Compel Arbitration (Rec. No. 109)

filed by the Defendant Nami Resources Company, LLC ("NRC"). Because NRC has waived its right

to compel arbitration, the motion will be DENIED.

I.        FACTS.

A.        **The 1999 and 2000 Agreements.**

NRC owns certain oil and gas leases (the "Leases") covering lands located in Whitley, Clay

and Knox Counties, Kentucky.  (Rec. No. 7, Ex. D, Participation Agreement, Recitals).  In 1999,

NRC and the Plaintiff Francis entered into three written agreements regarding ten wells leased to

NRC (the "1999 Wells").   These agreements were a Participation Agreement[1], an Operating

Agreement and a Promissory Note (the "1999 Agreements").  (Rec. No. 7, Ex. D, E and F).

The parties also drafted certain agreements in 2000 regarding six additional wells leased to

---

[1]  As was the case with NRC's first Motion to Compel Arbitration, NRC does not submit any of the agreements with this second Motion to Compel Arbitration.  The court explained in its opinion on NRC's first Motion to Compel Arbitration that, because the parties have filed various documents in the record which they allege to be the 1999 Participation Agreement, for purposes of that motion and any future motions, with no objection, the Court would consider the versions of the 1999 Agreements and 2000 Agreements submitted with NRC's original Answer and Counterclaim to be the final versions of the written documents (Rec. No. 7). Neither party has objected to that procedure and, accordingly, the court will follow it.

NRC (the "2000 Wells")[2]. These agreements were a Participation Agreement, an Operating Agreement and a Selling Agreement (the "2000 Agreements"). (Rec. No. 7, Ex. A, B and C). NRC asserts that these agreements were, in fact, executed. Francis asserts that the written agreements were not executed but states that the parties orally agreed to certain of the terms contained in the 2000 Agreements.

### B.   Procedural History.

### 1)   Francis's Complaint and NRC's Counterclaim for Arbitration.

Francis filed this action on October 12, 2004 (Rec. No. 1). In his Complaint, he asserts that NRC failed to pay him for gas produced from certain wells as it was required to do under the 1999 and 2000 Agreements. Francis asserts claims of breach of contract, breach of the implied covenant of good faith and fair dealing; conversion; unjust enrichment; and constructive trust against NRC. In his Complaint, Francis asserts that the 1999 Agreements were written but that the 2000 Agreements were oral. (Rec. No. 1, Complaint ¶ 9).

On January 10, 2005, NRC filed a Counterclaim in which it asserted that, pursuant to the 1999 and 2000 Agreements, all the claims asserted by Francis should be submitted to arbitration. (Rec. No.7, Answer and Counterclaim). In his answer to the Counterclaim, Francis asserted that the 2000 Participation Agreement, which contained the arbitration provision upon which NRC primarily relied for its Counterclaim, "is not dated, and has not been signed by either party to the Agreement. As such, the Agreement, and the arbitration provision contained therein, is not enforceable." (Rec. No. 8, Pf.'s Reply to Counterclaim, ¶ 15).

---

[2] As the court explained in its Opinion and Order on NRC's first Motion to Compel Arbitration, the parties agree that the 2000 Agreements covered six additional wells. All versions of the 2000 Participation Agreement in the record, however, state that the agreement covers ten wells.

     **2)**     **NRC's Request for Limited Discovery on Arbitrability.**

On February 14, 2005, the parties filed separate Reports of Parties' Planning Meeting.  In its report, NRC proposed two phases of discovery, the first of which would focus on the arbitrability of Francis's claims (Rec. No. 11).  NRC proposed that the parties would then brief the arbitration issue for the court and, if the court determined that any claims remained for its resolution, then the parties would proceed to the second discovery phase which would focus on the merits of Francis's claims.

The matter was referred to the Magistrate Judge for the development of a discovery plan and scheduling order.  On March 28, 2005, the Magistrate Judge denied NRC's request for the two-phase discovery plan, determining that the matters to be discovered in the proposed second phase would be needed in arbitration anyway if the court should determine that arbitration was appropriate.  (Rec. No. 15).

On June 8, 2005, NRC filed a motion to amend its Counterclaim (Rec. No. 18) explaining that, in its original Counterclaim, it had asserted only that Francis's claims should be arbitrated. However, in light of the Magistrate Judge's denial of NRC's request to determine arbitrability before proceeding to discovery on the merits, NRC sought to amend its Counterclaim so that all of its claims would be on the record during discovery.  NRC explained that it did not assert all of its claims against Francis in its original Counterclaim because it did not wish to waive its arbitration rights.

The court granted NRC's motion and, on July 11, 2005, NRC filed an Amended Counterclaim in which it continued to assert that this matter should be submitted to arbitration. (Rec. No. 21). NRC also asserted breach of contract and breach of the covenant of good faith and fair dealing claims against Francis. In his answer to the Amended Counterclaim filed on August 1, 2005, Francis continued to assert that the 2000 Participation Agreement "which contains the

3

arbitration provision upon which Defendant relies, is not dated, and has not been signed by either party to the Agreement.  As such, the Agreement, and the arbitration provision contained therein, is not enforceable."  (Rec. No. 23, Answer ¶ 25).

The Magistrate Judge then entered an Amended Scheduling Order which provided that discovery should end by May 1, 2006 and dispositive motions would be due by June 1, 2006.  (Rec. No. 26).

### 3)   Cross-Motions for Summary Judgment on the Merits.

On February 24, 2006, NRC filed a Motion for Partial Summary Judgment in which it asked the court to dismiss Francis's tort claims asserting that they are barred by the economic loss doctrine. (Rec. No. 32).  For purposes of the motion, NRC accepted as true that the sale of the 2000 Wells was governed by an oral agreement.  (Rec. No. 33, Mem. Supp. Mot. for Summ. J. at 4 n.1). NRC did not move to compel arbitration in this motion or otherwise argue that the parties were required to arbitrate their dispute regarding the 2000 Wells.

On June 1, 2006, Francis filed a Motion for Partial Summary Judgment (Rec. No. 73) in which he asked for judgment in his favor on his breach of contract claims.  Francis recognized a dispute between the parties "over the documents associated with" the 2000 Wells. For purposes of his motion, however, Francis accepted  NRC's position that the parties' agreements regarding the 2000 Wells were written.  Francis argued that, regardless of whether the agreement was written or oral, NRC had breached it as a matter of law. (Rec. No. 73, Mem. Supp. Mot. for Summ. J. at 7). On June 19, 2006, NRC responded to Francis's Motion for Partial Summary Judgment.  Within its response, NRC asserted that the 2000 Participation Agreement required the parties to submit to arbitration disputes regarding the 2000 Wells.  (Rec. No. 75, Response at 13-14).

4

4)      **NRC's Motions to Compel Arbitration.**

On August 30, 2006, NRC filed its first Motion to Compel Arbitration (Rec. No. 89) relying

on the following provision of the 1999 Participation Agreement:

> The parties further agree that wells 1,2, & 3 shall be drilled and producing
> economically feasible amounts of gas no later than June 10, 2000.  Economically
> feasible for purpose of this paragraph shall means that the wells are producing in
> aggregate at least 1350 MCF/month/per well.  If wells 1, 2 & 3 are producing
> substantially less than an economically feasible amount of gas then the parties hereto
> shall mutually agree upon an exchange of wells.  *In the event the parties are unable
> to agree upon an exchange then the matter shall be submitted to arbitration*.

(Rec. No. 7, Ex. D, Participation Agreement § I(C)(emphasis added)).

On November 13, 2006, this court denied that motion because the evidence in the record did

not show that the parties were "unable to agree upon" a well exchange.  (Rec. No. 100). Further, the

court determined that, even if a dispute should arise between the parties regarding the well exchange,

arbitration of that issue would not require a stay of this action which involves payments due from

wells that have already been drilled under the 1999 and 2000 Agreements.

On March 5, 2007, the parties then reasserted their earlier Motions for Partial Summary

Judgment and those motions have been fully briefed. (Rec. Nos. 104 and 105).   In his motion,

Francis continues to assert that the 2000 Participation Agreement and 2000 Operating Agreements

were never signed by the parties.  (Rec. No. 104, Mem. Supp. Mot. for Summ. J. at 4).  He also

continues to recognize a dispute between the parties over the documents associated with the 2000

Wells.  However, for purposes of his dispositive motion, Francis again accepted NRC's position that

the agreements regarding the 2000 Wells were written.  (Rec. No. 104, Mot. for Summ. J. at 13).

On March 23, 2007, NRC filed a response to Francis's Motion for Partial Summary

Judgment asserting that, under the 2000 Agreements, the parties were required to arbitrate the

disputes regarding the 2000 Wells. (Rec. No. 108, Response at 26).  On the same day, NRC filed this

5

second Motion to Compel Arbitration (Rec. No. 109).  While in its prior Motion to Compel Arbitration, NRC relied on the 1999 Participation Agreement, with its current motion, NRC relies on the following provision in the 2000 Participation Agreement:

> In the event the parties are unable to agree upon substantive matters of this Agreement disputes shall be submitted to arbitration.

(Rec. No. 7, Ex. A, 2000 Participation Agreement § I, p.3). .

## II.    ANALYSIS.

In his response to NRC's Motion to Compel Arbitration, in contrast to his position throughout this litigation, Francis does not contest the validity of the 2000 Participation Agreement or the applicability of the arbitration clause to this dispute. Instead, in opposing the Motion to Compel arbitration, Francis argues solely that NRC has waived any right to arbitrate under the 2000 Participation Agreement. Francis argues that NRC's motion to compel is based solely on legal grounds that it knew or should have known at the time it filed this action.  Francis argues that the motion is not based on any facts gained from discovery in this action.  It argues that NRC could have made the motion on the day it received Francis's complaint instead of waiting approximately two and a half years.

In reply, NRC argues that it has asserted its contractual right to arbitrate from the outset of this litigation.  It also argues that Francis challenged the validity of the 2000 agreements which contained the arbitration clause, thus requiring discovery on this issue.  NRC explains that it asked the court to permit discovery on the arbitrability issue before proceeding to discovery on the merits but that the Magistrate Judge denied that request.  Thus, NRC argues, it had to wait until discovery was completed before it could move to compel arbitration.  NRC argues that, after conducting discovery, it determined that Francis's argument that the parties' agreements regarding the 2000

Wells were oral was meritless. It then filed this Motion to Compel.

In addition, NRC argues that the parties had to go through discovery and dispositive motions on Francis's claims concerning the 1999 Wells because these claims "are not subject to arbitration and were required to be litigated in this action." (Rec. No. , Response at 5).   Thus, NRC argues, Francis cannot claim to be prejudiced by having to engage in discovery or by the filing of dispositive motions in this court.

Both parties assume that federal and not state law governs whether NRC has waived its right to arbitrate their dispute regarding the 2000 Wells. With one exception, the Sixth Circuit cases reviewed by the court addressing waiver of the right to arbitrate apply federal law.  *See, e.g.* *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568 (6th Cir. 2003); *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345 (6th Cir.2003); *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434 (6th Cir.2002).

 The one exception is *Woodsource Coil Coating, Inc. v. McGraw Construction Company, Inc.*, 946 F.2d 473 (6th Cir. 1991) where  the Sixth Circuit applied Illinois law to determine whether a party had waived its right to compel arbitration.  *Id*. at 476 n.3.  However, in that case, the contract at issue provided that "arbitration shall be . . . governed by the laws of the state of Illinois. . . ."  *Id*. Further, the district court had applied Illinois law and no party argued on appeal that this was in error.  *Id*. In this case, the 2000 Participation Agreement, which contains the arbitration clause at issue, provides that the agreement itself shall be governed by Kentucky law, but does not provide that arbitration in particular is to be governed by state law.  (Rec. No. 7, Answer and Counterclaim, Ex. A, 2000 Participation Agreement, § X(A)).  Further, as stated, both parties have asserted that federal law governs the waiver issue.  Thus, the court will apply federal law to the issue of whether NRC has waived its right to arbitrate.

7

In addition, neither party has disputed that the waiver issue should be decided by the court as opposed to the arbitrator.  In accordance with the First Circuit's analysis in *Marie v. Allied Home Mort. Corp.*, 402 F.3d 1, 11-15 (1st Cir. 2005), the court finds that the waiver issue is for this court to decide.

There is a strong federal policy  in favor of arbitration. *O.J. Distrib., Inc.*, 340 F.3d at 355. Because of the strong presumption in favor of arbitration, waiver of the right to arbitrate is not to be lightly inferred. *Id*.  Nevertheless, an agreement to arbitrate may be "waived by the actions of a party which are completely inconsistent with any reliance thereon." *Gen. Star Nat'l Ins. Co.*, 289 F.3d  t 438 (quoting *Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir.1973)). "There is no rigid rule as to what constitutes waiver of the right to arbitrate; the issue must be decided based on the circumstances of each particular case." *Southern Systems, Inc. v. Torrid Oven Ltd.*, 105 F. Supp. 2d 848, 854 (W.D. Tenn. 2000).  In determining whether waiver has occurred, courts may look at the following factors:

> 1) filing responsive pleadings while not asserting a right to arbitration; 2) filing pretrial motions; 3) engaging in extensive discovery; 4) using discovery methods not available in arbitration; 5) litigating issues on the merits; 6) the length of delay in invoking an arbitration right and seeking a stay; 7) the proximity of the trial date; 8) the prejudice to the opposing party; and 9) whether the party has filed a counterclaim.

*Reidy v. Cyberonics, Inc.,* 2007 WL 496679, at * 4-5 (S.D. Ohio 2007)(quoting *Konica Minolta Business Solutions, U.S.A., Inc. v. Allied Office Products, Inc.*, 2006 WL 3827461, at *11 (S.D. Ohio 2006)).

In *Reidy*, the court noted the disagreement among the Circuits regarding the importance of the prejudice factor.  *Id*. at *5.  While all courts treat prejudice as a  factor to consider in determining the waiver issue, some courts *require* the party opposing arbitration to demonstrate prejudice.  *Id*. (citing *See Rush v. Oppenheimer*, 779 F.2d 885, 887 (2d Cir.1985); *PaineWebber, Inc. v. Faragalli*,

61 F.3d 1063, 1069 (3d Cir.1995); *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir.1990)).  In *General Star*, the Sixth Circuit did not directly address this issue but stated that "a party may waive the right [to arbitration] by delaying its assertion to such an extent that the opposing party incurs *actual prejudice*." 289 F.3d at 438(emphasis added).  Accordingly, for purposes of this motion, the court has assumed that Francis must demonstrate that he has been actually prejudiced by the timing of NRC's Motion to Compel Arbitration.

NRC asserted its right to arbitrate in its first pleading filed with the court and has repeatedly asserted that right in various pleadings filed with the Court.  Nevertheless, NRC did not actually move the court to compel arbitration of the dispute regarding the 2000 Agreements until this motion, filed nearly two and a half years after this litigation began.  NRC's prior Motion to Compel Arbitration – filed just over 22 months after this litigation began – sought arbitration of the dispute regarding the 1999 Agreements.

During the two and a half years that have elapsed between the filing of this action and NRC's current Motion to Compel, the parties have engaged in extensive and heated discovery.  In fact, the parties had completed discovery before NRC made the current motion to compel arbitration.  While it does not appear from the face of NRC's Motion to Compel that it was required to engage in any discovery at all before moving to compel arbitration, for purposes of deciding this motion, the court will presume that NRC had to complete discovery before it could make this motion.  As explained above, NRC did ask the Magistrate Judge to permit the parties to conduct discovery on the arbitrability of the claims before the parties conducted discovery on the other substantive issues in this litigation. Francis has put forth no evidence that NRC did not actually engage in discovery on the arbitrability issue or that any such discovery was unnecessary given Francis's position throughout this litigation that the arbitration provision in the 2000 Agreements was not enforceable.

Accordingly, the court cannot find that NRC acted unreasonably by waiting until after discovery was complete to file a motion to compel arbitration.

Even assuming that it was necessary to complete discovery before NRC could move to compel arbitration, however, NRC does not provide any explanation as to why it waited so long after discovery ended – nearly 11 months – to compel arbitration of the dispute regarding the 2000 Participation Agreement.  This delay in and of itself may not have worked any prejudice on Francis if not for the extensive litigation on the merits that occurred in that time period.

While unable to move to compel arbitration before the close of discovery, NRC was able to move for summary judgment asking the court to resolve issues that it now seeks to arbitrate.  NRC moved for summary judgment on these issues in February 2006 – more than two months before discovery was completed and over a near before this motion to compel arbitration was filed.  NRC's Motion for Summary Judgment addresses the dispute regarding both the 2000 Agreements and the 1999 Agreements.  The filing of the motion is certainly an action inconsistent with a right to arbitrate.

In the period between the close of discovery and NRC's current Motion to Compel Arbitration, in accordance with the court's Scheduling Order, Francis also filed a motion for partial summary judgment on the issue that NRC now seeks to arbitrate.  He obviously would not have expended the time and resources to do this had the dispute been referred to arbitration.  Further, in that motion, Francis sets forth his argument that NRC breached the 2000 Agreements. Likewise, in response to NRC's motion for partial summary judgment, Francis sets forth his legal arguments as to why NRC is not entitled to that judgment.  By waiting to move to compel arbitration until after Francis had filed a motion for summary judgment and after he had responded to NRC's motion for summary judgment, NRC has now learned Francis's legal arguments and strategy on at least a

10

portion of the dispute regarding the 2000 Agreements. "[F]or purposes of a waiver of an arbitration agreement: 'prejudice ... refers to the inherent unfairness in terms of delay, expense, or *damage to a party's legal position* that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.' " *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 327 (5th Cir.1999) (quoting *Doctor's Assoc. v. Distajo*, 107 F.3d 126, 134 (2d Cir.1997) (emphasis added)); *National Foundation for Cancer Research v. A.G. Edwards & Sons*, 821 F.2d 772 (D.C. Cir. 1987)(recognizing that, because parties had filed motions for summary judgment before movant moved to compel arbitration, non-movant would suffer a "tactical disadvantage" if its arbitrable claims were "shunted over to arbitration procedures now that [movant] has enjoyed exhaustive discovery of [nonmovant's] evidence and legal theories on those issues").

For these reasons, the court finds that NRC unduly delayed in moving to compel arbitration and that the delay has prejudiced Francis. NRC has, therefore, waived its right to compel arbitration. Accordingly, the court hereby ORDERS that NRC's second Motion to Compel Arbitration (Rec. No. 109) is DENIED.

Dated this 16th day of October, 2007.

**Signed By:**

***Karen K. Caldwell***

**United States District Judge**