UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:04-510

JAMES E. FRANCIS, PLAINTIFF,

v. **OPINION AND ORDER**

NAMI RESOURCES COMPANY, LLC, DEFENDANT.

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion for Reconsideration (Rec. No. 122) filed by the Plaintiff James E. Francis in which he asks the Court to reconsider certain portions of its ruling (Rec. No. 118) on the parties' cross-motions for partial summary judgment.

At a status conference in this matter conducted on May 29, 2008, the parties indicated that this matter could be resolved with further mediation. The mediation was unsuccessful and this matter will be tried before a jury in London, Kentucky beginning January 12, 2009. At the status conference, the Court orally granted Francis's Motion for Reconsideration in part and denied it in part. Following are the Court's reasons for its ruling.

I.   FACTS.

This dispute revolves around certain agreements between the parties regarding 16 oil and gas wells. The Plaintiff, James E. Francis ("Francis") claims that, pursuant to those agreements, the Defendant Nami Resources Company, LLC ("NRC"), should be paying him some of the revenue produced by the wells. NRC argues that it has the right to withhold the revenue because Francis failed to pay his share of the expenses of producing the gas from the wells. Both parties have moved for partial summary judgment.

In his Complaint, Francis asserted a breach of contract claim against NRC, claiming that

NRC breached two sets of agreements between the parties. One set of these agreements was allegedly entered into in 1999 and the other set of agreements was allegedly entered into in 2000. Thus, the sets of agreements have been denominated the 1999 Agreements and the 2000 Agreements. The 1999 Agreements govern 10 wells (the "1999 Wells") and the 2000 Agreements govern six additional wells (the "2000 Wells").

In his Complaint, Francis also asserted bad faith, conversion, and unjust enrichment claims against NRC. As to remedies, in addition to compensatory damages, Francis requested rescission, a constructive trust, punitive damages, and pre-judgment interest.

In his Motion for Partial Summary Judgment, Francis moved for judgment as a matter of law on his breach of contract claims. He also asked the Court to rule as a matter of law that he is entitled to the remedies of rescission and pre-judgment interest. In its Motion for Partial Summary Judgment, NRC moved for judgment as a matter of law in its favor on the other claims asserted by Francis – bad faith, conversion, and unjust enrichment. NRC also asks the Court to rule as a matter of law that Francis is not entitled to the remedies of rescission, a constructive trust or punitive damages.

In a March 28, 2008 Opinion and Order, the Court denied Francis's Motion for Partial Summary Judgment and granted NRC's Motion for Partial Summary Judgment. As a result, the sole claims remaining by Francis in this action are his claims for breach of the 1999 and 2000 Agreements. The sole remedy that remains available to Francis is compensatory damages.

## II.     FRANCIS'S MOTION TO RECONSIDER.

### A.     Pre-Judgment Interest.

In his Motion for Partial Summary Judgment, Francis asked the Court to rule that he was entitled to the remedy of pre-judgment interest as a matter of law. In its ruling on the motion, after determining that Francis was not entitled to the remedy of rescission, the Court stated "Francis has

2

put forth no basis for awarding prejudgment interest other than his entitlement to rescission and, accordingly, the Court will also deny his request for this remedy."

The Court will grant Francis's Motion to Reconsider insofar as the Court's ruling on the parties' cross-motions for partial summary judgment determined that Francis would not be entitled to pre-judgment interest. "In a diversity case, state law governs the district court's decision whether to award prejudgment interest." *Conte v. General Housewares Corp.*, 215 F.3d 628, 633 (6th Cir. 2000). In *Nucor Corp. v. General Elec. Co.*, 812 S.W.2d 136 (Ky. 1991), the Kentucky Supreme Court adopted the Restatement (Second) of Contracts which provides that:

> (1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.
>
> (2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due."

*Id*. at 144 (quoting Restatement (Second) of Contracts § 354).

Because it is within this Court's discretion to award pre-judgment interest, the Court will reserve ruling until after trial on whether Francis is entitled to pre-judgment interest.

> **B.   Whether an Alleged Oral Modification to the 1999 Agreements is Supported by Consideration.**

The Court detailed the facts regarding the 1999 Agreements in its March 28, 2008 Order. Briefly, NRC was obligated under the 1999 Agreements to pay Francis certain revenue from the sale of oil and gas produced by the 1999 Wells. There is no dispute that NRC has stopped paying Francis this revenue and this forms the basis of Francis's claim against NRC for breach of the 1999 Agreements.

As its defense, NRC argues that Francis orally agreed some time after the parties signed the

3

1999 Agreements that he would pay some portion of the expenses of treating and stimulating the wells in order to increase their production. NRC further argues that Francis has refused to pay these expenses. Thus, NRC's argument appears to be that Francis breached the 1999 Agreements first, thereby excusing NRC from performing its obligation to pay Francis revenue under the 1999 Agreements.

Francis has argued that there was no such oral agreement. More importantly for the current motion, Francis argues, even if there was such an oral agreement, NRC cannot assert it as a defense because the agreement was not supported by consideration.[1] The Court has determined that NRC is asserting that the parties orally agreed that Francis would pay 80 percent of the treatment and stimulation expenses and NRC would pay 20 percent of these expenses.

In his Motion for Reconsideration, Francis argues that the 1999 Agreements obligated NRC to pay 100% of the treatment and stimulation of the 1999 Wells. As support for this position, Francis appears to rely on a provision in one of the 1999 Agreements – the Participation Agreement – providing that Francis's obligation to make the monthly payments required under the agreements was "conditioned upon the completion by Nami of two (2) wells per month." Francis argues that the term "completion" includes the treatment and stimulation of the 1999 Wells.

Thus, Francis argues, any agreement by NRC to later pay for only 20% of the treatment and stimulation expenses fails for lack of consideration. *See Whayne Supply Co. v. Gregory*, 291 S.W.2d 835, 838-39 (Ky.1956) (overruled in part on other grounds by *Brown v. Noland Co.*, 403 S.W.2d 33,

---

[1] NRC has not disputed that an oral modification of the agreement must be supported by consideration. Nor has NRC disputed Francis's argument that NRC cannot assert the oral agreement as a defense if it is not supported by consideration. The Court has found no law to the contrary. Further, as the Court reasoned in its summary judgment ruling, an agreement that lacks consideration – in contrast to an agreement that fails to meet the Statute of Frauds – is "void." Thus, it stands to reason that an agreement that lacks consideration may not be asserted even as a defense.

36 (Ky.1966)).

However, the Court finds that the term "completion" in the 1999 Agreements is ambiguous. The term may refer to treatment and stimulation of the wells as Francis argues. It may also refer only to the initial actions required to cause the wells to begin producing gas as NRC argues. Under this interpretation, the agreements may be read to simply fail to address who was to pay for any additional treatment and stimulation of the wells after they were initially hooked up and producing gas. There is evidence in the record supporting both of these arguments and, thus, a jury must decide this issue.[2]

If the jury should determine that the 1999 Agreements do not require either party to treat and stimulate the wells after their initial hook up, then the alleged oral agreement to split the cost of treating and stimulating the wells in order to increase their production is clearly supported by valid consideration.

However, even if the jury should determine that the 1999 Agreements require NRC to pay 100 percent of the treatment and stimulation expenses, the later agreement that NRC would pay only 20 percent of those costs and that Francis would pay 80 percent may still be supported by valid consideration. NRC argues that it also agreed to increase the price of gas paid to Francis in exchange for his agreement to treat and stimulate the wells. Francis argues that this agreement did not apply to the 1999 Wells, but only to the 2000 Wells. It appears that NRC is arguing the same thing. In its response to the Motion for Reconsideration, NRC discusses its obligations to adjust the price to be paid to Francis under the 2000 Selling Agreement.

---

[2] "Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002). "However, once a court determines that a contract is ambiguous, areas of dispute concerning the extrinsic evidence are factual issues and construction of the contract become subject to resolution by the fact-finder." *Id*.

If NRC adjusted the price paid to Francis under the 2000 Agreements in exchange for Francis's agreement to pay a portion of the costs to treat and stimulate the 1999 Wells and if NRC was not otherwise obligated to adjust the price under the 2000 Agreements, then Francis's agreement is supported by valid consideration.

    **C.    Whether the Evidence shows as a Matter of Law that NRC Began Withholding Production Revenues before it Incurred any Treatment and Stimulation Expenses Associated with the 1999 Wells.**

In his current motion, Francis argues that the evidence conclusively shows that NRC began withholding production revenues from the 1999 Wells before it incurred any treatment or stimulation expenses with regard to the 1999 Wells. In other words, Francis argues that the evidence conclusively shows that NRC breached its obligation to pay him revenues before he breached any alleged oral agreement to pay treatment and stimulation expenses.

The Court agrees that it has seen no evidence in the record that demonstrates conclusively that NRC incurred treatment and stimulation expenses prior to April 2001, the date it began withholding production revenues from the 1999 Wells. Nevertheless, the Court also continues to find that it is unclear when NRC incurred treatment and stimulation expenses associated with the 1999 Wells. Accordingly, the Court cannot decide as a matter of law at this time that NRC did not incur any treatment or stimulation expenses with regard to the 1999 Wells prior to April 2001.

    **D.    Whether the Evidence shows as a Matter of Law that the Treatment and Stimulation Expenses Incurred by NRC with Regard to the 2000 Wells was Less than $64,000.**

Francis argues that the evidence conclusively shows that the treatment and stimulation expenses that NRC incurred with regard to the 2000 Wells was less than the $64,000 he had already paid NRC to cover such expenses and, thus, NRC had no right to withhold production revenues from

him with regard to these wells. Francis argues NRC relies solely on the so-called Johnson Spreadsheet to prove that its expenses exceeded $64,000 but that everyone – including NRC's representatives in deposition testimony – agrees that the Johnson spreadsheet is inaccurate.

The Court has reviewed the spreadsheet and referenced depositions and continues to find that they do not conclusively establish the amounts expended by NRC for treatment and stimulation of the 2000 Wells.

      **E.**     **Whether Rescission is an Appropriate Remedy.**

In its summary judgment ruling, the Court determined that Francis was not entitled to rescission of the 1999 and 2000 Agreements because the parties could not be returned to their status before they entered into the agreements.

On reconsideration, Francis does not dispute that the parties could not be returned to their former status but argues that rescission is still an appropriate remedy because "the equities between the parties can be balanced." While *Black Motor Co. v. Green*, 79 S.W.2d 409 (Ky. 1934) allows that the restoration of the parties to their former status need not be absolute or literal, that case goes on to say:

> The restored goods do not have to be in the identical condition they were in when received, and the law is satisfied if they are so substantially so that neither party will be either materially enriched or impoverished.

*Id*. at 411.

There is no question that the drilled wells are not in substantially the same condition now as before the parties entered into the agreements. If Francis is simply given his money back as if the whole deal never happened, then NRC will alone pay the costs of drilling the wells. Francis argues this is equitable because NRC would have drilled the wells anyway. However, there is no evidence of this or that NRC would have born all the associated costs. Francis also argues that it is equitable

that NRC bear all the costs of drilling the wells because NRC attempted to defraud him with "doctored up" invoices regarding its treatment and stimulation expenses. Francis has not, however, asserted a fraud claim against NRC.

"The measure of damages for breach of contract is 'that sum which will put the injured party into the same position he would have been in had the contract been performed.'" *Hogan v. Long*, 922 S.W.2d 368 (Ky. 1995)(quoting *Perkins Motors, Inc. v. Autotruck Federal Credit Union*, 607 S.W.2d 429, 430 (Ky. App. 1980)). If NRC breached its obligation to pay Francis revenue from the 1999 and 2000 Wells, he can and should be adequately compensated with money damages.

For all these reasons, the Court hereby ORDERS as follows:

1) the Motion for Reconsideration (Rec. No. 122) is GRANTED only insofar as the Court's Summary Judgment ruling determined that Francis would not be entitled to pre-judgment interest. The court will reserve ruling on that issue until after trial; and

2) the Motion for Reconsideration is otherwise DENIED.

Dated this 9th day of December, 2008.

Signed By:
*Karen K. Caldwell*
United States District Judge